IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CLARENCE MITCHELL, IV          :
                               :
v.                             :   Civil Action WMN-02-602
                               :
PARIS GLENDENING               :

**MEMORANDUM**

Before the Court is Defendant's Motion for Protective Order to Quash Notice of Depositions, Paper No. 8.  The motion is ripe for the Court's consideration.  Upon review of the pleadings and applicable case law, the Court determines that no hearing is necessary and that the motion will be granted.

Article III, § 5 of the Maryland Constitution requires the governor, following each decennial census and after holding public hearings, to prepare a plan setting forth the boundaries of the legislative districts for electing members of the Maryland State Senate and House of Delegates.  After receiving the results of the 2000 Census, Governor Glendening appointed five individuals to serve on the Governor's Redistricting Advisory Committee (GRAC), including: Senator Thomas V. Mike Miller, Jr., President of the Maryland Senate; Delegate Casper R. Taylor, Jr., Speaker of the Maryland House of Delegates; Isaiah Leggett, Montgomery County Councilman; Secretary of State John T. Willis;

and Worcester County Commissioner Louise L. Gulyas. Karl S. Aro, Executive Director of the Maryland General Assembly's Department of Legislative Services, also assisted in the preparation of legislation and analysis of the proposed legislative district boundaries.

After conducting a public hearing and receiving the Committee's recommendations, the Governor submitted the redistricting plan to the General Assembly as Senate Joint Resolution 3 and House Joint Resolution 3 on January 9, 2002. In accordance with the provisions of Article III, § 5, the redistricting plan became law on February 22, 2002.[1]

The Complaint filed in this matter contains a single count alleging that the apportionment of Senate District 44 in Maryland's 2002 legislative redistricting plan violates § 2 of the Voting Rights Act, 42 U.S.C. § 1973, by denying African-American residents an equal opportunity to participate in the political process and to elect representatives of their choice. As part of the discovery process, Plaintiff gave Defendant notice that he seeks to depose Governor Glendening, Senator Miller, Delegate Taylor, Councilman Leggett, and Mr. Aro. Defendant has

---

[1] Article III, § 5 provides that if the General Assembly fails to act, either by ratifying the Governor's plan or by proposing one of its own, within 45 days from the introduction of the Governor's plan, the Governor's plan will become law. That is what occurred in this case.

2

moved for a protective order to quash Plaintiff's notice of depositions, on the ground that all five individuals are protected by legislative immunity.

The doctrine of legislative immunity is well established and has been discussed in detail previously by this Court. See, Marylanders for Fair Representation v. Schafer, 144 F.R.D. 292, 296-300 (D. Md. 1992). Legislative immunity not only provides protection from civil liability, it also functions as an evidentiary and testimonial privilege. See, Dombrowski v. Eastland, 387 U.S. 82, 85 (1967); Schlitz v. Commonwealth of Virginia, 854 F.2d 43, 45 (4th Cir. 1988), overruled on other grounds by Berkeley v. Common Council of City of Charleston, 63 F.3d 295 (4th Cir. 1995). The immunity "attaches to all actions taken 'in the sphere of legitimate legislative activity.'" Bogan v. Scott-Harris, 523 U.S. 44, 54 (1998) (quoting Tenney v. Brandlove, 341 U.S. 367, 376 (1951)). Whether an act is within this sphere for purposes of legislative immunity turns on the "nature of the act" and does not depend on the actor's title or position. Bogan, 523 U.S. at 55 (noting that "officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions").

Courts have not precisely defined which acts are to be deemed legislative for immunity purposes. It is settled,

however, that legitimate legislative action must be both substantively legislative and procedurally legislative. See, Ryan v. Burlington County, 889 F.2d 1286, 1291 (3d Cir. 1989). Acts which are legislative in substance involve "policy-making decisions of a general scope, or . . . line-drawing." Id. To be procedurally legislative, the act must be "passed by means of established legislative procedures" and "constitutionally accepted procedures of enacting the legislation must be followed . . . ." Id.

The parties in the instant case agree that the act of drafting the redistricting plan and presenting it to the General Assembly is substantively legislative. See, Pl.'s Opp. at 6; see also Schaefer, 144 F.R.D. at 304 (finding that Maryland's legislative redistricting process is "an exercise of legislative power"). Plaintiff argues, however, that the redistricting plan fails to meet the second, procedural prong of the test for legislative immunity. According to Plaintiff, the redistricting plan's journey through the General Assembly was plagued with several violations of the Senate Rules. Plaintiff alleges, without any supporting documentation, that (1) the plan was not referred to the Senate Rules Committee as it should have been under the rules; (2) technical changes were made to the plan that did not conform to procedures for making such amendments; and (3)

the plan was reprinted in violation of Senate Rule 52, which governs committee reprints.  See, Pl.'s Opp. at 6.

Although significant procedural deficiencies in the enactment of legislation may serve to strip actors of legislative immunity, courts have rejected the notion that "a mere technical violation of the statutory procedures specified for legislative action, by itself, converts an otherwise legislative action into an administrative action [to which legislative immunity would not apply]."  Acierno v. Cloutier, 40 F.3d 597, 614 (3d Cir. 1994).  Plaintiff has not argued that the alleged rule violations rendered the enactment of the redistricting plan unconstitutional.  Cf. Immigration & Naturalization Service v. Chadha, 462 U.S. 919 (1983) (holding one-house legislative veto unconstitutional).  Plaintiff's allegations were not mentioned in his Complaint, nor are they supported by any evidence that, as Plaintiff now asserts, "the methods taken to enact the redistricting plan in question completely obliterated the very deliberative processes legislative immunity seeks to protect."  Pl.'s Opp. at 7.  Without more, this Court cannot conclude that the alleged Senate Rule violations transformed the legislative acts of the redistricting plan's drafters (or others involved in the creation of the plan) into "non-legislative" acts undeserving of legislative immunity.

Finally, Plaintiff argues that legislative immunity should not prohibit judicial inquiry into legislative purpose where the challenged action is alleged to have violated "an overriding, free-standing public policy." Pl.'s Opp. at 4. Plaintiff's reliance on this principle is misplaced for at least two reasons. First, Plaintiff cites as precedent the Schaefer case, decided by this Court at the time of Maryland's last decennial redistricting plan. 144 F.R.D. 292. There, in a similar discovery dispute, Judges Murnaghan and Motz, sitting on a three-judge panel, held that three civilian members of the Governor's redistricting committee were not entitled to legislative immunity's testimonial privilege.[2] That decision relied in part on a Supreme Court case that recognized that "[i]n some extraordinary instances" legislators may be compelled to testify at trial about their legislative motives, when such motives are integral to the claims at hand. Village of Arlington Heights v. Metropolitan Housing Dev. Corp., 429 U.S. 252, 268 (1977). The plaintiffs in Schaefer, however, had brought claims in which legislative motive or intent was an element, whereas Plaintiff's sole claim in the instant case, brought under § 2 of the Voting Rights Act, does

---

[2] Apparently this decision was an unusual one. The Supreme Court of Texas recently searched case law for decisions in which persons acting in a legislative capacity were compelled to testify, and found only the Schaefer case. In re Perry, 60 S.W.2d 857, 862 n. 2 (Tex. 2001).

6

not require any proof of motive. See, Thornburg v. Gingles, 478 U.S. 30 (1986). Indeed, it does not appear that the motives or intentions of GRAC members, or others involved in the design of the plan, are at all relevant to Plaintiff's § 2 claim.

Second, Plaintiff appears to assume that Schaefer and Arlington Heights stand for the proposition that considerations of motive ought to factor into the legislative immunity inquiry. This idea was soundly rejected by a unanimous Supreme Court in Bogan v. Scott-Harris, 523 U.S. 44 (1998). There, the Court reiterated the long-standing principle that "[w]hether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." Id. at 54. Therefore, the Court stated, the appropriate inquiry for determining whether an actor is entitled to legislative immunity is "whether, stripped of all considerations of intent and motive, [the actors'] actions were legislative." Id. at 55. In this case, they clearly were, notwithstanding Plaintiff's interest in the motives of the plan's designers.

For the foregoing reasons, Defendant's Motion for Protective Order to Quash Notice of Depositions will be granted. A separate order will issue.

                                           _____
                                           William M. Nickerson
                                           United States District Judge